Filed 2/2/26  Canyon Vineyard Estates v. Commonwealth Land Title Ins. Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CANYON VINEYARD ESTATES I, LLC,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br><br>Defendant and Appellant. | B335797<br>(Los Angeles County Super. Ct. No. 23STCV04454) |

APPEAL from an order of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Reversed with directions.

Greenberg Traurig, Eric V. Rowen, Scott D. Bertzyk, Lisa M. Petrovsky, and Alex Linhardt for Defendant and Appellant.

Buchalter, John L. Hosack, Robert M. Dato, and Jason E. Goldstein for Plaintiff and Respondent.

———————————

In this insurance bad faith action, Commonwealth Land Title Insurance Company (Commonwealth or CLTIC) appeals from the trial court's denial of its special motion to strike under Code of Civil Procedure section 425.16[1] (the anti-SLAPP motion). Canyon Vineyard Estates I, LLC (Canyon Vineyard) alleges Commonwealth, Canyon Vineyard's property title insurer, breached the implied covenant of good faith and fair dealing by (1) failing to investigate Canyon Vineyard's title insurance policy claim, (2) delaying and denying payment on the claim, (3) misrepresenting policy terms, (4) hiring conflicted counsel instead of appointing independent counsel, and (5) directing conflicted counsel to take positions in litigation that harmed Canyon Vineyard and gave Commonwealth a basis to deny the claim. Commonwealth contends this cause of action arises from the prior lawsuit it filed on Canyon Vineyard's behalf, and thus falls within the scope of protected activity under section 425.16, subdivisions (e)(1) and (e)(2).

We affirm in part and reverse in part.

The trial court correctly ruled that Canyon Vineyard's allegations concerning Commonwealth's failure to investigate, misrepresentation of policy provisions, and hiring of conflicted counsel instead of independent counsel do not arise from protected litigation activity. While some acts may relate to the underlying litigation, these allegations stem from Commonwealth's alleged mishandling of Canyon Vineyard's insurance claim—not from its participation in a lawsuit. Because the acts giving rise to liability do not arise out of statements or

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise noted.

writings made in connection with an issue under review by a judicial body, they fall outside the scope of section 425.16.

However, two sets of allegations in the complaint do implicate protected activity: the allegations that Commonwealth delayed paying Canyon Vineyard's claim by filing a lawsuit and taking a frivolous appeal, and those alleging Commonwealth directed counsel it hired to defend Canyon Vineyard to take positions in the litigation that were not in Canyon Vineyard's interest but rather benefited Commonwealth. We remand the matter for the trial court to perform the second step of the anti-SLAPP analysis on these sets of allegations to determine whether Canyon Vineyard has shown a probability of prevailing on its "delay by litigation" and "directing conflicted counsel" claims.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Canyon Vineyard Purchases the Property and Obtains Title Insurance from Commonwealth*

In 2001 philanthropist and businessman John Paul DeJoria offered to sell part of a 417-acre coastal property in Malibu (the Property) to Mountains Restoration Trust (Mountains Restoration)—a nonprofit dedicated to land conservation in the Santa Monica Mountains—and to donate the

---

[2] The included facts are alleged in Canyon Vineyard's complaint and stated in the parties' declarations and attached evidence. (§ 425.16, subd. (b)(2) ["In making its determination [under the anti-SLAPP statute], the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."]; see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79; *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 929.)

3

rest. DeJoria agreed to sell the Property for $1,060,000 and to donate the remainder of the $13 million appraised value. In a 2002 grant deed (the Grant Deed), DeJoria stated the Property "shall be held in perpetuity as natural open space" and established "covenants running with the land, binding upon the real property and each successive owner thereof." The Grant Deed also specified that if Mountains Restoration or any successors breached the use restrictions, DeJoria was entitled to a return of the Property.

To facilitate the sale, Mountains Restoration took out a $1,060,000 loan, secured by a first-priority deed of trust on the Property (the Deed of Trust). In January 2002 a title company recorded the Grant Deed, the Deed of Trust, and a subordination agreement among DeJoria, Mountains Restoration, and the bank (the Subordination Agreement). The Subordination Agreement ensured the bank's Deed of Trust was the " 'first' priority lien" on the Property and was superior to DeJoria's right to a return of the Property under the Grant Deed. Therefore, if Mountains Restoration defaulted on the loan, the bank would be able to foreclose on the property without risking that the Property would revert to DeJoria.

In April 2006 Mountains Restoration defaulted under the loan. In February 2008 Hyperion Fund, L.P. (Fund), seeking an investment opportunity, purchased the loan through its affiliate, The Malibu Horizon Trust (Trust), for $1.378 million. The Trust foreclosed on the Deed of Trust and acquired title to the Property. After reviewing the loan documents, the Fund concluded the foreclosure had eliminated all deed restrictions created by the Grant Deed, including the requirement the Property "be held in perpetuity as natural open space." Based on this analysis, the

4

Fund believed the Property could be developed with up to 12 homes and would be worth more than $13 million.  The Trust formed Canyon Vineyard to develop the Property and transferred title to it.

Canyon Vineyard then sought title insurance from Commonwealth through Commonwealth's agent Commonwealth Land Title Company (CLTC).  (CLTC is also a defendant in this action but did not file an anti-SLAPP motion and is not part of this appeal.)  Canyon Vineyard requested a policy that would insure clear and marketable title to the Property, including that the 2008 foreclosure eliminated all restrictions recorded with the Grant Deed.  CLTC initially proposed a policy with an exception for "Deed Restrictions."  Canyon Vineyard requested the exception be removed, noting the 2008 foreclosure should have extinguished those restrictions.  CLTC's underwriting counsel and staff analyzed the title documents and agreed.  CLTC removed the exception, and Canyon Vineyard accepted the policy and paid the premium.

The final policy included no exception for any "Deed Restrictions."  It stated Commonwealth "shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to an insured," whether or not Commonwealth was liable under the policy, provided it "do so diligently."  Commonwealth reserved the right, "in its sole discretion, to appeal from any adverse judgment or order."  In the event of litigation, Commonwealth would not be liable "until there has been a final determination by a court of competent jurisdiction,

5

and disposition of all appeals therefore, adverse to the title, or, if applicable, to the lien of the insured mortgage, as insured."

B.    *Canyon Vineyard Tenders a Claim to Commonwealth After Rezoning Fails, and Canyon Vineyard Brings an Unsuccessful Quiet Title Action*

In January 2017 Canyon Vineyard applied to rezone the Property from "Open Space" to "Rural Residential" for development. The Los Angeles County Department of Regional Planning denied the application. It concluded that the requirement in the Grant Deed that the Property "be held in perpetuity as natural open space" imposed a perpetual conservation easement on the Property, barring any residential development.

Canyon Vineyard then tendered a claim to Commonwealth under its title insurance policy.[3] Commonwealth retained the law firm Garrett & Tully (Garrett) as counsel and instructed Garrett to file a quiet title action on Canyon Vineyard's behalf against DeJoria, Mountains Restoration, the City of Malibu, the County of Los Angeles, and the California Coastal Commission in Los Angeles Superior Court (case No. SC128181, the Underlying Action). Canyon Vineyard was the only plaintiff in the suit; Commonwealth was not a party. The Underlying Action sought to quiet title and obtain a judicial declaration that the 2008 foreclosure had extinguished the deed restrictions, including the requirement the Property "be held in perpetuity as natural open

---

[3]    Canyon Vineyard also retained independent counsel, who filed (an apparently unsuccessful) petition for writ of mandate based on the county's zoning decision.

6

space." The complaint in the Underlying Action asserted the Subordination Agreement subordinated any restrictions in the Grant Deed, such as that the property remain an open space, to the bank's Deed of Trust. Accordingly, the complaint alleged, the use restrictions in the Grant Deed were extinguished when the Deed of Trust was foreclosed on.

In January 2020 the trial court granted summary judgment for the defendants. The court concluded that the Grant Deed created a "perpetual conservation easement . . . which was not extinguished by foreclosure." The court determined that the Subordination Agreement did not subordinate the conservation easement to the lien of the bank's Deed of Trust, and therefore the foreclosure on the Deed of Trust did not eliminate the easement.

Commonwealth appealed, and in April 2022 another division of this District affirmed the trial court's ruling. (See *Canyon Vineyard Estates I, LLC v. DeJoria* (2022) 78 Cal.App.5th 995, 1004-1013.) The California Supreme Court denied review. (*Canyon Vineyard Estates I, LLC v. DeJoria*, review denied Aug. 10, 2022, S274548.)

C. *Commonwealth Denies Canyon Vineyard's Title Insurance Claim*

In September 2022, after the litigation concluded, Canyon Vineyard submitted a letter and a declaration to Commonwealth as proof of loss under the policy. Over the next three months, Commonwealth sent multiple letters acknowledging the ongoing investigation and requesting additional documents and information.

7

In February 2023 Commonwealth denied Canyon Vineyard's claim. It asserted that Canyon Vineyard had suffered no indemnifiable loss under the policy because the purchase price already reflected the Property's status as encumbered by the conservation easement. According to Commonwealth, "an owner suffers no economic loss when the fair market value of the purchase price already reflected the encumbrance in the price willingly paid by it." Commonwealth rejected Canyon Vineyard's claim that the conservation easement rendered the Property far less valuable than the $80 million value of the land if unencumbered. It stated Canyon Vineyard had posed "the wrong inquiry" and maintained the correct question was whether the purchase price already accounted for the easement—a conclusion it believed was affirmed by the Court of Appeal.

Commonwealth also argued Canyon Vineyard "assumed" or "agreed to" take title subject to the conservation easement. It characterized the restriction not as a "deed restriction," but as a statutory conservation easement, and cited both the trial court's judgment and the Court of Appeal's opinion. Commonwealth concluded that the title insurance policy did not cover any loss stemming from the easement or related zoning limitations, citing the policy exclusions for losses caused by "any law, ordinance or governmental regulations" or the exercise of "governmental police power."

D.  *Canyon Vineyard Files Suit Against Commonwealth*
In March 2023 Canyon Vineyard filed a civil complaint against Commonwealth alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair

8

dealing (bad faith).[4]  The anti-SLAPP motion targets only the bad faith cause of action.

The bad faith cause of action alleges Commonwealth breached the duty of good faith and fair dealing by: (1) failing to investigate Canyon Vineyard's claim for benefits, (2) misrepresenting policy provisions, (3) delaying and withholding payment, (4) failing to appoint independent counsel and instead hiring counsel that had a conflict of interest, and (5) directing conflicted counsel to take positions in the Underlying Action that harmed Canyon Vineyard and benefited Commonwealth.

The complaint alleges Commonwealth "knowingly and deliberately made the concealments and misrepresentations about the condition of title to the Property[,] acted with knowledge of the probably dangerous consequences to [Canyon Vineyard,] and knowingly and deliberately failed to avoid these consequences."  The complaint also stated that, at Commonwealth's direction, Garrett "falsely and recklessly alleged" certain things in the complaint and amended complaint in the Underlying Action, such as that the foreclosure extinguished any deed restrictions.

The complaint makes specific allegations to support each of the theories of bad faith liability, as follows.

1.     *Allegations about the failure to investigate*

Canyon Vineyard alleges that in May 2017, when it submitted its policy claim, Commonwealth was obligated to

---

[4]     The complaint also alleges separate causes of action against CLTC (but not Commonwealth) for negligent misrepresentation and fraud.

9

conduct a full and fair investigation.  Had it done so, Commonwealth would have learned that:  "(A) the land use restrictions in the Grant Deed, including the conservation easement, were not intended by the parties to be subject to the Subordination Agreement; (B) the Subordination Agreement was '. . . structured and written . . .' to only subordinate Deloria's rights in the Property, not the conservation easement, to the Bank's Deed of Trust; and (C) in accordance with the mutual intentions of the parties and the terms of the Subordination Agreement, the conservation easement had existed unchanged on the Property since January of 2002, and remained unchanged on the Property after the 2008 foreclosure sale which did not affect it."

### 2. *Allegations about misrepresenting policy terms*

Canyon Vineyard alleges that in 2008 Commonwealth "knowingly insured over[5] the known title defect which had been created by the conservation easement."  Despite having "actual knowledge of all material facts relative to the issuance of the Policy," in February 2023 Commonwealth "in bad faith engaged in 'post claim underwriting' of the Policy" to exclude coverage for Canyon Vineyard's claim.  The complaint also alleges that if in 2008 Commonwealth believed the policy excluded coverage of a conservation easement, it was obligated "in good faith" to disclose that exclusion up front, not conceal it.

---

5  According to Canyon Vineyard, "[t]he term, 'insure over,' is used in the title insurance industry, to mean insuring the title to real property despite, and without an exception for, a known title defect (i.e., the conservation easement)."

3. *Allegations about delaying payment*

The complaint asserts the trial court judgment in the Underlying Action triggered Commonwealth's liability because the policy insured against loss or damage from a conservation easement that "prevented [Canyon Vineyard's] development of the Property for any viable purpose." Even though the judgment made its liability clear, Commonwealth "unreasonably and in bad faith demanded that the Superior Court Judgment be appealed." The complaint notes that "a total of twelve (12) judicial officers had ruled on [Commonwealth's] litigation and none of them had ruled in favor of the claims of [Commonwealth]." Canyon Vineyard "believe[d] that the primary purpose of the appeal was to delay the inevitable payment to [Canyon Vineyard] of the Amount of Insurance in the amount of $13,000,000.00."

4. *Allegations about refusing to appoint independent counsel, hiring conflicted counsel, and directing the conflicted counsel in litigation*

The complaint alleges that after Commonwealth accepted the policy claim tendered by Canyon Vineyard with a reservation of rights, Commonwealth acted in bad faith when it denied Canyon Vineyard's request for independent counsel and instead insisted on hiring Garrett, which had "multiple conflicts of interest, because it extensively represented [Commonwealth] and its affiliates."

The complaint further alleges that, in the Underlying Action, "there were several conflicting theories of how to treat the interests which had been created by the recordation of the Grant Deed, one theory which was covered by [Canyon Vineyard's] title policy (*i.e.,* the Subordination Agreement was not intended by the parties to and did not subordinate the conservation easement to

11

the lien of the Bank's Deed of Trust as was found by the Court of Appeal) and one theory which (according to [Commonwealth]) was not covered by [the] Policy (i.e. the Subordination Agreement was intended by the parties to subordinate the conservation easement to the lien of the Bank's Deed of Trust, but the intent of the parties and the Subordination Agreement could not be carried out because of ' . . . governmental regulation . . . ' and ' . . . governmental police power . . . ' which are allegedly Excluded From Coverage under the terms of [the] Policy)."  Canyon Vineyard alleges that if Canyon Vineyard did not prevail in the Underlying Action, Commonwealth had a financial interest in losing on the non-covered theory because it could rely on the outcome of the case to deny Canyon Vineyard's policy claim.  The complaint alleges that Commonwealth directed Garrett to file an amended complaint in the Underlying Action that falsely and recklessly alleged that the deed restrictions did not create a perpetual conservation easement and that the foreclosure sale extinguished the deed restrictions.

The complaint further alleges that by January 2018, when the court ruled on the defendants' demurrer in the Underlying Action, Commonwealth knew there was a conservation easement and "an attendant conflict of interest," yet it continued to deny Canyon Vineyard's request for independent counsel and continued to require that Canyon Vineyard be represented by Garrett, which failed to put Canyon Vineyard's interests first due to its conflict.  Commonwealth's and Garrett's allegations in the litigation "served as invitation" to Commonwealth to ultimately deny Canyon Vineyard's claim, whereas independent counsel would not have taken such positions that put Commonwealth's interests ahead of Canyon Vineyard's.

E.  *Commonwealth's Anti-SLAPP Motion*

1.  *Commonwealth's motion*

Commonwealth filed an anti-SLAPP motion asserting the bad faith cause of action arose from the litigation filings in the Underlying Action.[6]  It further asserted Canyon Vineyard could not show a probability of prevailing on the merits because (1) the alleged conduct was absolutely privileged under the litigation privilege, (2) the evidence showed Commonwealth acted in good faith by prosecuting the Underlying Action at Canyon Vineyard's direction and at Commonwealth's significant expense, and (3) Commonwealth had not wrongfully withheld benefits, as Canyon Vineyard had not shown an indemnifiable loss.  Canyon Vineyard requested the court strike the bad faith cause of action in its entirety.  In supplemental briefing, Canyon Vineyard alternatively requested that the court strike paragraphs 32, 34, 37, and 68 through 72 of the complaint.

2.  *Canyon Vineyard's opposition*

Canyon Vineyard opposed the motion, arguing the litigation statements at issue were not the basis of liability, but instead served as "evidentiary support for a portion of [Canyon Vineyard's] bad faith claim" and showed Commonwealth's "unreasonabl[e] fail[ure] to perform its obligations under the terms of the Policy."  (Emphasis omitted.)  Canyon Vineyard highlighted that its bad faith cause of action arose before the Underlying Action began in 2017 and involved Commonwealth's

---

[6]  Commonwealth and CLTC also filed a demurrer to the complaint.  The demurrer remains unresolved because the trial court stayed the proceedings pending this appeal.

13

conduct dating back to 2008—nine years earlier. Canyon Vineyard argued the bad faith cause of action had at least minimal merit because Commonwealth "expressly agreed to 'insure over' a known recorded potential 'Deed Restrictions' and thereafter did everything possible to deny coverage based on the very risk [Commonwealth] agreed to insure against."

      3.    *The trial court's ruling*

The court denied the anti-SLAPP motion. While the court agreed that "the filing and prosecution of the underlying action is undoubtedly protected conduct," it determined the bad faith cause of action "did not arise from" and was "not based on this protected petitioning activity."

The court identified four alleged breaches forming the basis of the bad faith cause of action: (1) failing to properly investigate Canyon Vineyard's policy claim, (2) failing to timely make a payment, (3) misrepresenting policy provisions, and (4) failing to obtain independent counsel for Canyon Vineyard due to conflicts of interest. The court concluded none of these theories was based on protected conduct. It found the failure to investigate had no connection to the underlying litigation and the alleged misrepresentations "could not be based on statements made in the underlying proceeding" because "the underlying proceeding had nothing to do with [Canyon Vineyard's] insurance policy with [Commonwealth]." Citing the Court of Appeal opinion, the trial court noted the Underlying Action was not about insurance coverage but rather concerned whether the land remained burdened by a conservation easement.

The court acknowledged that Commonwealth's alleged conduct in withholding payments related to the underlying litigation in that the complaint alleged Commonwealth knew it

14

was obligated to pay once the trial court granted summary judgment in the Underlying Action but delayed by pursuing an appeal. However, relying on *Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 257-258 (*Miller*), the court held those allegations " 'merely provide[d] context, without supporting a claim for recovery' " and "cannot be stricken under the anti-SLAPP statute." The court reasoned, "The wrongful conduct that forms the basis of this claim is [Commonwealth's] failure to timely pay [Canyon Vineyard's] claim—not the appeal itself. At most, the allegations concerning the appeal illustrate *how* [Commonwealth] delayed payment, namely, by creating an excuse for not immediately paying [Canyon Vineyard's] claim and by stringing [Canyon Vineyard] along during the pendency of the appeal. However, the pursuit of the appeal is not itself the wrongful conduct."

Similarly, with respect to the allegations about Commonwealth's appointment of conflicted rather than independent counsel and the allegations that Commonwealth directed conflicted counsel to take particular positions in the Underlying Action that harmed Canyon Vineyard and helped Commonwealth, the court reasoned that what gives rise to liability is not the fact of counsel's communications, but that Commonwealth allegedly denied Canyon Vineyard the benefit of independent professional judgment. "The allegations regarding the underlying lawsuit provide mere background which explains the conflict of interest and *why* [Commonwealth] should have appointed independent counsel for [Canyon Vineyard]."

Commonwealth timely appealed.

15

# DISCUSSION

A.    *Applicable Law and Standard of Review*

Section 425.16, subdivision (b)(1), states that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Courts evaluate special motions to strike under section 425.16 using a two-step process.  "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.]  Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); see *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*); *Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815, 826.)  We review de novo an order granting or denying a special motion to strike under section 425.16.  (*Bonni*, at p. 1009; *Littlefield*, at p. 825.)

In analyzing a special motion to strike, at the first step a court must determine whether the cause of action arises from protected activity, i.e., the activity "underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.)  A court must " 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Bonni, supra*, 11 Cal.5th at p. 1009; see

16

*Park,* at p. 1063; accord, *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887; *Littlefield v. Littlefield, supra,* 106 Cal.App.5th at pp. 826-827.)

"Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 (*Baral*); accord, *Bonni, supra,* 11 Cal.5th at p. 1068; *Trilogy Plumbing, Inc. v. Navigators Specialty Ins. Co.* (2020) 50 Cal.App.5th 920, 931 (*Trilogy*).) "[T]he anti-SLAPP statute protects speech and petitioning activity taken in connection with an official proceeding, but not necessarily the decisions made or actions taken as a result of those proceedings." (*Bonni*, at p. 1014.) " '[A] claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Ibid.*; see *Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 34 [" 'A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs.' "]; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1400 [in examining whether cause of action arose from protected litigation activity, court must draw distinction between acts of alleged misconduct and the evidence needed to prove them].) "The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy." (*Baral*, at p. 395.)

Once a defendant establishes the complaint seeks relief "based on allegations arising from [protected] activity[,]" the trial

17

court must proceed to step two. (*Baral*, *supra*, 1 Cal.5th at p. 396.) At step two, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Ibid.*)

Canyon Vineyard incorrectly asserts that if at least one claim supporting bad faith liability in its complaint rests on unprotected activity, we may affirm the trial court's order without analyzing whether the remaining claims arise out of protected activity. In the anti-SLAPP analysis, when a cause of action is " ' "mixed," ' " such that it "rests on allegations of multiple acts, some of which constitute protected activity and some of which do not," "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, *supra*, 11 Cal.5th at p. 1010; see *Baral*, *supra*, 1 Cal.5th at p. 395 ["an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded"].) The focus is not on whether the cause of action as a whole survives, but whether any particular claim or theory of liability is based on protected activity.

B.   *The Bad Faith Cause of Action Arose in Part from Protected Activity*

The parties do not dispute that Commonwealth engaged in protected activity under section 425.16 in the Underlying Action. Section 425.16, subdivision (e)(1), provides protected activity includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official

18

proceeding authorized by law," and subdivision (e)(2) provides protected activity includes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."[7]  Commonwealth's alleged conduct—funding and directing the filing and prosecution of the Underlying Action—qualifies as protected activity.  (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [protected activity "includes communicative conduct such as the filing, funding, and prosecution of a civil action"]; *Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673, 681 ["the anti-SLAPP statute may be invoked by one who did not personally engage in the protected communicative conduct:  'A person can exercise his own rights by supporting the forceful activities of others' "].)

Commonwealth contends that Canyon Vineyard's bad faith cause of action arises from this protected activity involving the Underlying Action.  However, " ' "conduct is not automatically protected merely because it is related to pending litigation; the conduct must arise from the litigation." ' "  (*Trilogy*, *supra*, 50 Cal.App.5th at p. 931, italics omitted.)

---

[7]      If the speech or activity at issue was made or conducted in an official proceeding authorized by law, there is no need to show it is connected to a public issue.  (*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 32; accord, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116 [" 'it is the context or setting itself that makes the issue a public issue:  all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding' "].)

19

An evaluation of whether Canyon Vineyard's bad faith cause of action arises from protected litigation activity begins by identifying the elements of a bad faith cause of action. (See *Bonni, supra,* 11 Cal.5th at p. 1009; *Park, supra,* 2 Cal.5th at p. 1063.) "The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. 'The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests.' " (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 (*Wilson*).)

An insurer violates the implied covenant when (1) the insurer withheld benefits due under the policy; and (2) the withholding was " 'unreasonable' or 'without proper cause.' " (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1209.) "The actionable withholding of benefits may consist of the denial of benefits due [citation]; paying less than due [citation]; and/or unreasonably delaying payments due." (*Ibid.*; see *Maslo v. Ameriprise Auto & Home Ins.* (2014) 227 Cal.App.4th 626, 633 [" 'An insurer that unreasonably delays, or fails to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant.' "].)

Moreover, "while an insurance company has no obligation under the implied covenant of good faith and fair dealing to pay every claim its insured makes, the insurer cannot deny the claim 'without fully investigating the grounds for its denial.' " (*Wilson, supra,* 42 Cal.4th at p. 720.) " 'A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim.' " (*Id.* at p. 721.) In

addition, a breach of an insurer's contractual duty to defend its insured, where unreasonable, violates the covenant of good faith and fair dealing. (*Miller*, *supra*, 41 Cal.App.5th at p. 257.)

We next determine whether Commonwealth's protected activity supplies one or more of the elements of the cause of action. (See *Bonni*, *supra*, 11 Cal.5th at p. 1009; *Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 887; *Park*, *supra*, 2 Cal.5th at p. 1024.) We assess the allegations in the complaint as to each individual claim of bad faith by Commonwealth to determine whether the claim is based on Commonwealth's protected litigation activity. (See *Bonni*, at p. 1012 [courts analyze each of the "alleged various acts [asserted] as a basis for relief" to determine if they arise out of protected activity, and "each act or set of acts must be analyzed separately under the usual two-step anti-SLAPP framework"].)

C.    *The Claim Based on Commonwealth's Failure To Investigate Does Not Arise from Protected Activity*

Canyon Vineyard first alleges that Commonwealth breached the implied covenant of good faith and fair dealing by failing to adequately investigate Canyon Vineyard's title insurance claim. Specifically, Canyon Vineyard alleges that if Commonwealth had conducted the required investigation in 2017, it would have discovered that, in 2002: "(A) the parties had not intended to subordinate the conservation easement to the Bank's Deed of Trust; (B) the Subordination Agreement did not subordinate the conservation easement to the Bank's Deed of Trust; and (C) at a minimum, [Commonwealth] owed $13,000,000.00 in policy benefits to [Canyon Vineyard]." Canyon Vineyard further asserts that Commonwealth "(A) recklessly

21

failed to determine the intention of the parties in 2002 in entering into the Subordination Agreement; and (B) recklessly failed to understand the Subordination Agreement."

The trial court correctly concluded that this claim "has nothing to do with the petitioning activity." The gist of the theory is that Commonwealth should have conducted an investigation *before* taking any other action, including instructing Garrett to file a lawsuit or denying the claim. Whether Commonwealth ultimately filed suit is beside the point; it was the alleged failure to investigate that breached the implied covenant. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 ["when benefits are due an insured, 'delayed payment based on inadequate or tardy investigations . . . may breach the implied covenant because they frustrate the insured's right to receive the benefits of the contract in prompt compensation for losses' "]; *Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, 94-95 [concluding bad faith cause of action did not arise out of petitioning activity where "[t]he outlined actions (or nonactions) occurred as part of a coverage dispute between an insurer and its insured, and occurred long before any arbitration or other proceeding commenced. [Citation.] Nothing had yet happened to which a right to petition attached."].)

Commonwealth argues this basis for liability is a "back-handed attack on the petitioning activity that took place" because it "implies that, had [Commonwealth] investigated better, it would have reached the same conclusion as the Court of Appeal in the Underlying Action." But the actionable conduct is the failure to adequately investigate relevant facts, not filing documents or taking a particular position in litigation. The

allegations that Commonwealth "falsely and recklessly" pleaded facts in the Underlying Action is evidentiary support that Commonwealth failed to investigate, not the basis for liability. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [the anti-SLAPP statute does not bar the evidentiary use of statements made in judicial proceedings]; *Miller*, *supra*, 41 Cal.App.5th at p. 257 [" '[t]here is a "distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim" ' "].)

D.     *The Allegations Regarding Commonwealth's Misrepresentation of Policy Terms Are Not Based on Protected Activity*

The complaint also alleges Commonwealth misrepresented the terms of the policy it issued.[8]  As the trial court correctly found, these misrepresentations "could not be based on statements made in the underlying proceeding."  The Underlying Action—which focused on the existence and enforceability of a

---

[8]     While the complaint alleges Commonwealth breached the implied duty of good faith and fair dealing by "misrepresenting Policy provisions" to Canyon Vineyard, Commonwealth asserts the complaint alleges misstatements about the policy terms only by CLTC, not by Commonwealth.  Commonwealth argues "a different entity allegedly misrepresenting policy provisions cannot be the basis of a tort claim against CLTIC."  However, that is an argument for the second step of the anti-SLAPP inquiry, or in connection with the demurrer.  In determining whether the first step of the anti-SLAPP analysis has been satisfied, we focus only on whether the asserted actions giving rise to liability are protected activity.  (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93-94.)

23

conservation easement on undeveloped Malibu land—did not concern the formation, terms, or underwriting of Canyon Vineyard's title policy. The misrepresentations at issue allegedly began years before the Underlying Action, in connection with the policy's sale in 2008 and the claims process beginning in 2017.[9] These allegations are not based on protected petitioning activity under section 425.16. (See *State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974, 977 ["the action for declaratory relief *arose* from the tender of defense and the terms of an insurance policy issued well before the underlying litigation commenced, not from the litigation process itself"].)

---

[9] Commonwealth requests judicial notice of two trial court documents in the instant proceeding: a post-appeal brief filed by Canyon Vineyard and the court's corresponding order stating that in its pleading Canyon Vineyard stated its bad faith cause of action was limited to conduct in 2017 and afterwards, which is inconsistent with Canyon Vineyard's position in opposing the anti-SLAPP motion that its claim arose out of Commonwealth's false inducements starting in 2008. While the pleading and the order are subject to judicial notice under Evidence Code sections 452, subdivision (d), and 459, judicial notice is only warranted "if the documents for which notice is sought are at least minimally relevant to the instant appeal." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1530, fn. 7.) Both the brief and the order postdate the trial court's ruling on the anti-SLAPP motion and therefore are irrelevant to whether the trial court erred in denying the motion; thus, we deny the request for judicial notice. (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1106 [evidence postdating a judgment or order is "not a proper subject of augmentation or judicial notice"]; *Pacific Palisades Residents Assn., Inc. v. City of Los Angeles* (2023) 88 Cal.App.5th 1338, 1362 [applying " 'elementary rule of appellate procedure' " to deny request to take judicial notice of extra-record material].)

E.      *The Allegations Regarding Commonwealth's Delayed*
        *Payment Are Based on Protected Activity*

Canyon Vineyard's complaint also alleges Commonwealth unreasonably delayed payment of its policy claim.  The trial court determined "the core conduct" to support this theory was the failure to pay, which existed regardless of whether the Underlying Action was filed or not.  However, bad faith liability requires more than just nonpayment—an insured must also prove "the reason for withholding benefits [was] unreasonable or without proper cause."  (*Grebow v. Mercury Ins. Co.* (2015) 241 Cal.App.4th 564, 581.)  Canyon Vineyard must therefore show *how* Commonwealth acted unreasonably in delaying payment—not simply that a delay occurred.  Otherwise, the bad faith claim is no more than a breach of contract claim.  (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352 ["To the extent the implied covenant claim seeks simply to invoke terms to which the parties did agree, it is superfluous."].)

The title insurance policy expressly permitted Commonwealth "to institute and prosecute any action" to establish title or to reduce loss, and "in its sole discretion, to appeal from any adverse judgment or order."  It also specified Commonwealth would have no liability until entry of a final judgment.  Thus, Commonwealth contends, and we agree, this particular bad faith claim necessarily relies on Commonwealth's *unreasonable* decision to litigate and appeal.  For example, Canyon Vineyard asserts Commonwealth's obligation to pay its policy claim arose when the superior court entered judgment in the Underlying Action.  Yet Commonwealth allegedly "unreasonably and in bad faith demanded that the Superior Court Judgment be appealed," and Canyon Vineyard now

25

believes "the primary purpose of the appeal was to delay the inevitable payment." That allegation squarely challenges Commonwealth's use of petitioning activity—its right to appeal— as unreasonable. (See *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 673 [allegations that the plaintiffs had suffered losses due to a law firm's delay in resolution of an SEC investigation involved protected conduct because "some of the specific conduct complained of involves positions the firm took in court, or in anticipation of litigation"]; cf. *Beach v. Harco National Ins. Co.*, *supra*, 110 Cal.App.4th at p. 93 [allegations that insurer delayed payment did not rely on protected activity because the complaint did not allege any communications as the basis for the bad faith cause of action but rather alleged defendant's nonaction was the "bad faith behavior"]; *State Farm General Ins. Co. v. Majorino*, *supra*, 99 Cal.App.4th at p. 977 [declaratory relief action filed by insurer against its insured not a SLAPP because it "*arose* from the tender of defense and the terms of an insurance policy issued well before the underlying litigation commenced, not from the litigation process itself"].)

The trial court reasoned the allegations "illustrate *how* [Commonwealth] delayed payment, namely, by creating an excuse for not immediately paying [Canyon Vineyard's] claim and by stringing [Canyon Vineyard] along," but concluded that the "pursuit of the appeal is not itself the wrongful conduct." However, the "how" of the delay is a required element of the claim—the insured must establish that the delay in prosecuting a lawsuit, which was permitted under the policy if taken reasonably, was unreasonable. (See *Wilson*, *supra*, 42 Cal.4th at p. 723 ["[A]n insurer's denial of or delay in paying benefits gives

26

rise to tort damages only if the insured shows the denial or delay was unreasonable"]; see also *Case v. State Farm Mutual Automobile Ins. Co., Inc.* (2018) 30 Cal.App.5th 397, 413 ["the adequacy of the insurer's claims handling is properly assessed in light of conduct by the insured delaying resolution of a claim"].) Commonwealth's petitioning activity is not merely background or context. It is the alleged means by which Commonwealth unreasonably delayed payment. Accordingly, this claim arises from protected activity.

F.  *The Bad Faith Claim That Commonwealth Failed To Hire Independent Counsel and Instead Hired Conflicted Counsel Does Not Arise from Protected Activity, but the Claim That Commonwealth Directed Conflicted Counsel To Engage in Particular Petitioning Activity Does*

The complaint also alleges that Commonwealth acted in bad faith by denying Canyon Vineyard's request that it appoint independent counsel and unreasonably insisting on hiring counsel (Garrett) that had "multiple conflicts" given the law firm frequently represented Commonwealth and its affiliates. According to Canyon Vineyard, Commonwealth's and Canyon Vineyard's interests diverged because Commonwealth had an incentive to lose in the Underlying Action on a ground that would not be covered by the policy.[10] Despite this conflict of interest

---

[10]  "[A]n insurer having a duty to defend its insured must provide its insured independent counsel when a 'conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured' unless 'at the time the insured is informed that a possible conflict may arise or does

27

and Canyon Vineyard's requests for independent counsel, Commonwealth denied Canyon Vineyard's request and required Canyon Vineyard to accept Garrett as its counsel in the quiet title action.

The trial court determined that these allegations do not arise out of Commonwealth's petitioning activity in the Underlying Action and instead challenge only Commonwealth's failure to comply with its contractual and legal duties to provide independent counsel. We agree that the allegations of the complaint limited to Commonwealth's failure to perform its duties to hire independent counsel do not trigger the application of section 425.16. (See *Callister v. James B. Church & Assocs., P.C.* (2025) 108 Cal.App.5th 185, 198 [where defendant law firm was charged with "*failing* to act or speak, not with making any affirmative statements or engaging in any specific communicative acts," law firm's alleged conduct was not protected speech and petitioning activity]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 631 (2003) [attorney's *failure* to do something in a litigation proceeding is not properly subject to motion to strike under § 425.16].)

Moreover, allegations that Commonwealth acted in bad faith by hiring conflicted counsel in lieu of independent counsel are not based on protected activity, to the extent the allegations

---

exist, the insured expressly waives, in writing, the right to independent counsel.'" (Civ. Code, § 2860, subd. (a); see *Miller*, *supra*, 41 Cal.App.5th at p. 251, fn. 3.) "[W]hen an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist." (Civ. Code, § 2860, subd. (b).)

do not encompass oral or written communications in the Underlying Action.  (See *Trilogy*, *supra*, 50 Cal.App.5th at p. 932 [complaint's allegations were not based on protected activity where they did not refer to oral or written statements in lawsuits or settlement discussions, but instead addressed the insurance company's "*conduct* generally in mishandling the claims process" by failing to retain independent counsel and hiring conflicted counsel for the insured]; *Miller*, *supra*, 41 Cal.App.5th at pp. 258-259 [allegations of insureds' complaint against insurer did not arise out of petitioning activity where " '[w]hat gives rise to liability' is not the fact of counsels' communications, but that [insurer] allegedly denied the [insureds] the 'benefit' of panel counsel's independent professional judgment in rendering legal services to them"]; see also *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 722 [plaintiffs' lawsuit against former counsel did not arise from the filing or settlement of litigation but rather from the attorney's "undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them"].)

However, Canyon Vineyard's complaint also includes allegations that not only accuse Commonwealth of failing to hire independent counsel and hiring conflicted counsel, but also assert that Commonwealth directed conflicted counsel to take particular positions in the Underlying Action that placed Commonwealth's interests ahead of Canyon Vineyard's.  Canyon Vineyard claims that Garrett, *at Commonwealth's direction*, failed to put Canyon Vineyard's interests first due to its conflict and took positions that independent counsel would not have taken, to Canyon Vineyard's detriment.  For instance, the complaint alleges the positions taken by Garrett that the deed restrictions did not

29

create a conservation easement and that the foreclosure sale extinguished the deed restrictions "served as [an] invitation" to Commonwealth to ultimately deny Canyon Vineyard's claim. Allegations that Commonwealth directed Garrett to assert positions in court filings in the Underlying Action that harmed Canyon Vineyard and helped Commonwealth are squarely based on communications during litigation, i.e., protected activity. The inclusion of allegations of such affirmative conduct involving communications in court pleadings distinguishes this case from cases on which Canyon Vineyard relies, such as *Miller*, *supra*, 41 Cal.App.5th 247, and *Trilogy*, *supra*, 50 Cal.App.5th 920.

In *Miller*, the plaintiffs had filed an earlier action in federal court seeking redress for past environmental contamination of property owned by a family trust for which the plaintiffs were the trustees. (*Miller*, *supra*, 41 Cal.App.5th at p. 250.) When the defendant in that suit countersued the plaintiffs, the insurer of a policy owned by the plaintiffs' family's estate agreed to represent and defend the plaintiffs against the counterclaim (subject to an extensive reservation of rights) but refused to permit independent counsel to represent the plaintiffs and instead retained panel counsel to represent them. (*Id.* at pp. 251-252.) The plaintiffs later sued the insurer for breach of the implied duty of good faith and fair dealing by improperly allowing counsel that it had retained to defend one of the plaintiffs' adversaries in the federal action to communicate with and advise the plaintiffs' claims handlers and to exert influence and control over the handling of the plaintiffs' defense by panel counsel appointed by the insurer. (*Id.* at pp. 252-253.) The complaint alleged that the insurer had "instructed and limited panel counsel's ability to properly defend" the plaintiffs. (*Id.* at p. 253.)

30

The insurer filed an anti-SLAPP motion, arguing the plaintiffs' implied covenant cause of action was based on allegations of counsels' communications that were protected petitioning activity. (*Miller*, *supra*, 41 Cal.App.5th at pp. 255, 258.) However, the appellate court concluded "[t]he allegations of counsels' communications do not concern the substantive issue of the [plaintiffs'] liability as alleged in the . . . counterclaim or any coverage matter. Instead, the communications concern procedural matters regarding 'discovery,' 'correspondence with [the insurer's] claims handlers,' and 'payments' to the [plaintiffs], directly related to [the insurers'] duty to defend obligations owed to the [plaintiffs] by appointing panel counsel to represent them in defending the . . . counterclaim. [¶] Thus, '[w]hat gives rise to liability' is not the fact of counsels' communications, but that [the insurer] allegedly denied the [plaintiffs] the 'benefit' of panel counsel's independent professional judgment in rendering legal services to them." (*Id*. at p. 258.) Accordingly, the court concluded the allegations of counsels' communications did not give rise to the insurer's liability but instead were "only evidence that provides the context for the allegation that [the insurer] unreasonably and without proper cause interfered with panel counsel's representation of the [plaintiffs] in defending against the . . . counterclaim." (*Id*. at pp. 258-259.)

While the communications in *Miller* did not concern substantive issues giving rise to the insurer's liability, here they do. According to the complaint, at Commonwealth's behest, Garrett asserted positions in the Underlying Action that harmed Canyon Vineyard and helped Commonwealth with respect to the ultimate question of whether Commonwealth was liable under the title insurance policy. Thus, Commonwealth's direction to

31

Garrett to engage in particular petitioning activity "*itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park*, *supra*, 2 Cal.5th at p. 1060.)

*Trilogy*, *supra*, 50 Cal.App.5th 920 is similarly distinguishable.  In that case, the plaintiff alleged that its insurer required the plaintiff to use conflicted counsel and the insurer ordered those conflicted attorneys to take actions that breached fiduciary duties and duties of loyalty owed to the plaintiff, in order to promote the insurers' interests rather than the plaintiff's interests.  (*Id.* at p. 928.)  The insurer contended the alleged conduct was protected activity under section 425.16, subdivision (e)(2).  However, the court noted that the complaint did "not challenge any attorney's conduct in litigating any claim" and did "not refer to any oral or written statements or communicative conduct by anyone."  (*Trilogy*, at pp. 932, 935.) "While the alleged acts were generally connected to litigation," they did not constitute protected activity under section 425.16. (*Trilogy*, at p. 924.)

By contrast, Canyon Vineyard seeks to impose tort liability on Commonwealth in part based on Commonwealth's direction to Garrett to take particular positions in the Underlying Action. Those directions are the alleged injury-producing conduct that form the basis for this particular theory of bad faith liability alleged by Canyon Vineyard.  Because the allegations about these directions are based on protected activity, Commonwealth has satisfied the first step of the anti-SLAPP analysis with respect to those allegations.

G.    *The Trial Court Should Determine in the First Instance Whether Canyon Vineyard Can Demonstrate a Probability of Prevailing on the Merits of the Two Claims That Are Based on Protected Activity*

As we have concluded, Commonwealth met its first-step burden as to two of Canyon Vineyard's claims of bad faith conduct; thus, Commonwealth is entitled to a preliminary screening of these allegations to determine whether they have minimal merit or in the alternative must be stricken. (*Wilson v. Cables News Network, Inc., supra*, 7 Cal.5th at p. 904.) Because the trial court concluded Commonwealth did not satisfy the first step of the anti-SLAPP analysis for any of the bad faith allegations in the complaint, it did not reach this second step.

Under these circumstances, we have discretion to decide the issue ourselves, because it is subject to independent review, but we also may remand the matter to the trial court to conduct the second-step analysis. (*Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, 1355.) We conclude "the more prudent course is to remand the matter to the trial court to determine in the first instance whether [Canyon Vineyard] demonstrated a reasonable probability of prevailing on the merits" of the claims resting on the delay in payment and the direction of conflicted counsel to take positions in the Underlying Action that harmed Canyon Vineyard. (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1527; accord, *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58.) Given the distinction we have drawn between the "hiring conflicted counsel instead of independent counsel" and the "directing of conflicted counsel" theories of liability for the bad faith cause of action, the trial court may, in

its discretion, wish to order supplemental briefing on whether Canyon Vineyard demonstrated a reasonable probability of succeeding on the latter claim.

## DISPOSITION

The order denying Commonwealth's special motion to strike under section 425.16 is reversed. The matter is remanded to the trial court to enter an order that denies Commonwealth's motion to strike the allegations regarding the failure to investigate, misrepresentation of policy provisions, and hiring of conflicted counsel instead of independent counsel; and to consider whether Canyon Vineyard has shown a probability of prevailing on the merits as to the allegations regarding the delay in payment and the bad faith direction of conflicted counsel.

If Canyon Vineyard fails to show a probability of prevailing on the claim regarding Commonwealth's unreasonable delay in payment, the following shall be stricken from the complaint: paragraph 37 in its entirety and paragraph 67, subsections (D) and (F) only.

If Canyon Vineyard fails to show a probability of prevailing on the claim that Commonwealth directed conflicted counsel to take litigation positions that harmed Canyon Vineyard, the following allegations shall be stricken from or amended in the complaint:

- In paragraph 32, strike "CLTIC instructed" and "which CLTIC required be verified by CVE" and replace "Garrett to file" with "Garrett filed"
- In paragraph 34, strike "at the direction of CLTIC" and "which CLTIC required be verified by CVE"
- In paragraph 69, strike "at the direction of CLTIC"

34

- In paragraph 71, strike "CLTIC and" before "Garrett's initial allegations"
- Throughout the complaint, replace "CLTIC's Complaint" with "the Complaint" and replace "CLTIC's Amended Complaint" with "the Amended Complaint"

Commonwealth's requests for judicial notice are denied.

The parties are to bear their own costs on appeal.

STONE, J.

We concur:

SEGAL, Acting P. J.

GIZA, J.*

---

\*       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.